In re The AIMTREE COMPANY f/d/b/a Equity Telecommunications, Inc., Debtor.

The AIMTREE COMPANY f/d/b/a Equity Telecommunications, Inc., Plaintiff,

v.

AT & T CORPORATION, Defendant.

Civil Action No. 96–MC–208–GTV.
Bankruptcy No. 94–22154–11–JTF.
Adversary No. 96–6002.

United States District Court,
D. Kansas.

Oct. 7, 1996.

Joanne B. Stutz, Evans & Mullinix, P.A., Lenexa, KS, for Aimtree Company.

W. Joseph Hatley, Lathrop & Gage L.C., Overland Park, KS, Brian T. Fenimore, Mary E. Clune, Lathrop & Gage L.C., Kansas City, MO, Lin M. Trucksess, AT & T Law Department, San Francisco, CA, for AT & T Corp.

## MEMORANDUM AND ORDER

VAN BEBBER, Chief Judge.

This matter comes before the court on defendant's objections to the Proposed Findings of Fact and Conclusions of Law submitted to the court by Bankruptcy Judge Flannagan, pursuant to 28 U.S.C. § 157(c)(1) and Bankruptcy Rule 9033. Plaintiff opposes defendant's objections and moves for adoption of the proposed findings. For the reasons set forth below, the proposed findings are adopted.

### I. Factual Background

Plaintiff filed a voluntary Petition for Relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 1101 *et seq.*, on November 18, 1994, in the United States Bankruptcy Court for the District of Kansas. On January 4, 1996, plaintiff then commenced an adversary proceeding in which it sought an injunction restraining defendant from refusing to provide technical and maintenance services on certain telecommunications equipment in plaintiff's possession.

After holding a series of hearings on plaintiff's adversary complaint, the bankruptcy court determined that a preliminary injunction was in order. Because it did not have statutory authority to enter an injunction in this "non-core" proceeding, however, the bankruptcy court, pursuant to 28 U.S.C. § 157(c)(1), submitted "Proposed Findings of Fact and Conclusions of Law" for review in the district court.[1] In its proposed findings, the bankruptcy court suggested that a preliminary injunction be entered requiring defendant to provide plaintiff with both parts and technical services for the telephone switch and software through which plaintiff provides telecommunication services. Specifically, the court recommended ordering defendant "to replace worn tapes and a tone board and to perform any other services needed to insure [that] the computer involved will not crash."

### II. Standard of Review

In reviewing a bankruptcy court's proposed findings of fact and conclusions of law in a non-core proceeding, the district court must examine de novo "those matters to which any party has timely and specifically objected." Bankruptcy Rule 9033.

### III. Discussion

Preliminary injunctive relief may be granted only if the moving party can establish that: (1) the movant party will suffer irreparable injury unless the injunction issues; (2) the threatened injury to the movant outweighs whatever damage the proposed in-

1. The bankruptcy court stated its "Proposed Findings of Fact and Conclusion of Law" on the record in a February 12, 1996 hearing. The court then memorialized and partially modified its findings in an order dated February 15, 1996.

junction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood that the movant will eventually prevail on the merits.[2] *Kansas Health Care Ass'n, Inc. v. Kansas Dep't of Social and Rehabilitation Servs.,* 31 F.3d 1536, 1542 (10th Cir.1994). The court will analyze each element in turn.

*A. Irreparable Injury*

■ A party seeking injunctive relief first must demonstrate that it will suffer irreparable injury unless an injunction is issued. The bankruptcy court found that plaintiff had satisfied this element by showing that its reorganization efforts would "be irreparably harmed by the revenue loss that would result from a crash of the AT & T switch." Defendant objects to the court's conclusion on the ground that it improperly assumes the switch is in immediate danger of crashing.

This court finds that plaintiff has satisfied the "irreparable injury" requirement. John Lichtenauer, AT & T's own field engineer, testified that both the backup tapes and the tone board on plaintiff's switch need to be replaced. While the switch can function without backup tapes, operating the system in such a manner creates the potential for total loss of translation data if the system crashes. It is impossible to determine whether plaintiff's operating system might crash. Indeed, while Mr. Lichtenauer opined that the switch was not "in imminent danger of crashing," he conceded under cross-examination that there is no way to anticipate such an occurrence. What is certain, however, is that without the backup tapes, plaintiff has no safeguards to protect its investment in the telecommunications equipment.

Moreover, plaintiff can not purchase replacement tapes or obtain necessary repairs from secondary market technicians. The switch's components consist almost entirely of unpublished AT & T proprietary software.

Because the software is password protected, only an AT & T technician can perform sophisticated repairs. AT & T, however, has refused to provide plaintiff with any equipment or technical assistance. Without purchasing an entirely new system—at a cost of several hundred thousand dollars—plaintiff is, therefore, forced to walk a narrow financial tightrope. The court concludes that such a scenario is sufficient to satisfy the "irreparable injury" element of the preliminary injunction test.

*B. Balancing of Injuries*

■ Plaintiff also must establish that its threatened injury outweighs whatever damage the injunction may cause the defendant. If the injunction is not issued, and plaintiff's operating system fails, plaintiff would be unable to provide long distance service to its more than 500 customers. These customers would most likely take their business elsewhere, and the resulting loss in revenue would thwart a successful reorganization.

Defendant, meanwhile, would suffer little, if any, prejudice from the issuance of an injunction. Plaintiff has agreed to pay defendant, in advance if necessary, for all services performed. Moreover, the proposed injunction embraces a very limited duration; the bankruptcy court recommended that it run only until plaintiff's reorganization plan is confirmed. After balancing the interests of the parties, this court concludes that plaintiff has met its burden of establishing that its threatened injury outweighs the potential damage to defendant.

*C. Public Interest*

■ Next, the court must address defendant's claim that the injunction would undermine the strong public interest in permitting citizens to contract *vel non* with whomever they choose. Defendant argues that the proposed injunction "essentially im-

---

**2.** In its proposed findings, the bankruptcy court suggested that a district judge could enter a preliminary injunction pursuant to 11 U.S.C. § 105 without consideration of whether plaintiff has complied with the usual standards for obtaining injunctive relief. This court disagrees. Because a request for injunctive relief under section 105 is akin to a request for a preliminary injunction, the party seeking the relief must satisfy the requirements of Fed.R.Civ.P. 65. *American Imaging Servs., Inc. v. Eagle–Picher Indus., Inc. (In re Eagle–Picher Indus., Inc.),* 963 F.2d 855, 858 (6th Cir.1992); Lawrence P. King, *Collier on Bankruptcy* ¶ 105.02[1] (15th ed. 1996).

poses a new contract upon AT & T" and that "AT & T wants no part of this contract." Although the court agrees that "it is a matter of great public concern that the freedom of contract be not lightly interfered with," *Steele v. Drummond*, 275 U.S. 199, 205, 48 S.Ct. 53, 54, 72 L.Ed. 238 (1927), the court disputes the contention that the injunction imposes any new obligations upon defendant. Indeed, under the product agreement that defendant entered into with plaintiff on March 31, 1992, defendant is already obligated to provide the necessary parts and services for plaintiff's switch.

Defendant argues that the warranties covering both the hardware and software associated with the AT & T switch have expired. The court concurs. Defendant's duties, however, do not arise from the warranties, but from the implicit terms and conditions of the contract. Although the warranties are no longer operative, the contract remains in effect.

Sections 13 and 14 of the product agreement state that the software is licensed to plaintiff and remains the property of defendant. The license is worthless, however, if plaintiff does not have the requisite software to operate the equipment. As noted previously, because the switch licensed to plaintiff contains a multitude of proprietary features that are unique to AT & T, non-AT & T replacement products are ineffective. In addition, defendant has structured the switch's diagnostic capabilities so that only defendant's representatives can service the software. Interpreting the product agreement in a manner that would leave defendant's customers with no one to service their equipment, at any price, is unconscionable.

The court does not believe that the parties intended such an interpretation of the contract at the time it was drafted. It appears, for example, that defendant envisioned the necessity of post-warranty repairs. Paragraph 3(6) of the product agreement addendum states that "AT & T may provide other coverage options for an additional charge." The testimony before the bankruptcy court also suggested that defendant has not refused to provide service to any of its customers, other than plaintiff. Unless and until the product agreement is terminated, defendant is obligated to service the equipment licensed to plaintiff. Accordingly, the court finds that an injunction would not be adverse to the public interest.

## D. Likelihood of Success on Merits

Finally, plaintiff must demonstrate a substantial likelihood that it will ultimately prevail on the merits. The Tenth Circuit has adopted a slightly modified "likelihood of success" requirement. If the first three requirements for a preliminary injunction have been satisfied, "the movant may establish likelihood of success by showing questions going to the merits so serious, substantial, difficult and doubtful, as to make the issues ripe for litigation and deserving of more deliberate investigation." *Walmer v. United States Dep't of Defense*, 52 F.3d 851, 854 (10th Cir.), *cert. denied*, — U.S. —, 116 S.Ct. 474, 133 L.Ed.2d 403 (1995).

Defendant argues that the bankruptcy court improperly invoked the modified "likelihood of success" standard in the case at bar. Defendant points to *SCFC ILC, Inc. v. Visa USA, Inc.*, 936 F.2d 1096 (10th Cir. 1991), which holds that in order to obtain certain types of preliminary injunctions, a movant must satisfy an even heavier burden of showing that the elements of the four-pronged test set forth above "weigh heavily and compellingly in his favor." *Id.* at 1098. These include preliminary injunctions that disturb the status quo, are mandatory as opposed to prohibitory, or afford the movant substantially all the relief he may recover at the conclusion of a full trial on the merits. *Id.* at 1098–99.

Defendant insists that the bankruptcy court's proposed injunction embraces each of the categories for which *Visa* requires heightened burdens of proof. This court disagrees. The proposed injunction does not alter the status quo. As discussed above in Part C, defendant is currently obligated under the product agreement to service the equipment licensed to plaintiff. Rather than breathing new life into an expired contract, the injunction simply would enforce the terms of a viable product agreement. Thus,

even if the *Visa* standards are applied, the court is satisfied that plaintiff has met its burden of proof for obtaining injunctive relief.

 Defendant further contends that the bankruptcy court erred in excluding evidence of the fraudulent conduct allegedly committed by plaintiff's president, Eric Duck. Defendant claims the "unclean hands" doctrine prevents the issuance of a preliminary injunction because Mr. Duck's conduct is imputed to plaintiff. This argument, however, ignores the fact that the filing of a bankruptcy petition alters the rights of a corporation. *Delgado Oil Co., Inc. v. Torres,* 785 F.2d 857, 860 (10th Cir.1986). The bankruptcy court's approval of plaintiff's status as a debtor-in-possession endowed plaintiff with the powers of a trustee. *Id.* While Mr. Duck's alleged conduct may have prevented plaintiff from securing an injunction prior to declaring bankruptcy, the conduct is irrelevant in this post-petition inquiry.[3] Indeed, courts have held consistently that "the 'unclean hands' of a pre-petition debtor are not imputed to a debtor-in-possession or trustee." *In re Sanborn,* 181 B.R. 683, 692 n. 15 (Bankr.D.Mass.1995); *McGraw v. Liberty Airlines, Inc. (In re Bell & Beckwith),* 89 B.R. 632, 640 (Bankr.D.Ohio 1988). Accordingly, this court finds that the bankruptcy court properly determined that the pre-petition actions of plaintiff's agents are irrelevant to the preliminary injunction analysis.

IT IS, THEREFORE, BY THE COURT ORDERED that the bankruptcy court's Proposed Findings of Facts and Conclusions of Law are adopted as described in this Memorandum and Order.

IT IS FURTHER ORDERED that defendant shall furnish the backup tapes and tone board to plaintiff as well as perform any other services necessary to insure that plaintiff's operating system does not crash, at the same price defendant would charge any other of its licensees who are not under a maintenance agreement.

IT IS FURTHER ORDERED that if the parties are unable to agree as to when the maintenance work should be commenced and completed, plaintiff shall submit suggestions in that regard to this court. Defendant will have the opportunity to respond to plaintiff's suggestions.

IT IS FURTHER ORDERED that this injunction shall be valid only until plaintiff's reorganization plan has been confirmed by the bankruptcy court.

**IT IS SO ORDERED.**

---

**3.** Defendant is not in a completely helpless position with respect to Mr. Duck's conduct. As the bankruptcy court pointed out, "If indeed there is truth to the allegations set out in [defendant's] offer of proof, there are many other remedies. One would be to move to have Mr. Duck removed as the person in control of the debtor-in-possession as allowed by [11 U.S.C. § 1104]. Another would be to object to the confirmation of the plan of reorganization."